# EXHIBIT A



# IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**IN RE: OPIOID LITIGATION**          **CIVIL ACTION NO. 21-C-9000-PHARM**

## THIS DOCUMENT APPLIES TO ALL STATE CASES AGAINST PHARMACIES

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON
### ORDER DENYING PHARMACY DEFENDANTS' MOTIONS
### TO DISMISS COMPLAINTS AND AMENDED COMPLAINTS

Pending before the Mass Litigation Panel ("Panel") are the Pharmacy Defendants'[1]

Motions to Dismiss complaints filed against them by the State of West Virginia, acting through

its Attorney General ("the State"):[2]

1. **CVS** – Motion to Dismiss Complaint (Transaction ID 66812516) and Motion to Dismiss First Amended Complaint (Transaction ID 67074618);

2. **Rite Aid** – Motion to Dismiss Complaint (Transaction ID 66805397),[3] Rite Aid of Maryland's Motion to Dismiss First Amended Complaint (Transaction ID 6689210), and Rite Aid of West Virginia's Motion to Dismiss Second Amended Complaint (Transaction ID 67072600)[4];

3. **Walgreens** – Motion to Dismiss Complaint (Transaction ID 66816944),[5] and Motion to Dismiss First Amended Complaint (Transaction ID 67074136); and

---

[1] CVS Pharmacy, Inc.; CVS Indiana, L.L.C.; CVS Rx Services, Inc.; and CVS TN Distribution, L.L.C.; West Virginia CVS Pharmacy, L.L.C. (collectively, "CVS") Civil Action No. 20-C-131 PNM; Rite Aid of Maryland, Inc. ("Rite Aid of Maryland"); Rite Aid of West Virginia, Inc. ("Rite Aid of West Virginia") (collectively, "Rite Aid") Civil Action No. 20-C-83 PNM; Walgreens Boots Alliance, Inc.; Walgreen Co.; Walgreen Eastern Co., Inc. (collectively, "Walgreens") Civil Action No. 20-C-82 PNM; and Walmart, Inc. ("Walmart") Civil Action No. 20-C-132 PNM.

[2] Because the Pharmacy Defendants provide a detailed recitation of the procedural history of their motions to dismiss in their Motion for Hearing or a Ruling on the Briefs (Transaction ID 67447693), the Panel will not repeat it here.

[3] Defendant Rite Aid Corporation ("RAC") filed a separate motion to dismiss the Complaint for lack of personal jurisdiction (Transaction ID 66805303). RAC was subsequently dismissed without prejudice (Transaction ID 66815276).

[4] On July 27, 2022, the Panel was informed by the State and Rite Aid that they have reached an agreement in principle to resolve this litigation. *Notice of Settlement in Principle and Joint Motion for Stay of Proceedings* (Transaction ID 67866902). The Panel granted the State and Rite Aid's joint motion for a stay of proceedings with respect to Rite Aid to permit the parties to finalize settlement, including completion and execution of a formal settlement agreement. *Order Staying Proceedings Against Rite Aid* entered on July 27, 2022 (Transaction ID 67867052).

4. **Walmart** – Motion to Dismiss First Amended Complaint (Transaction ID 66979844).

Having reviewed and considered the arguments raised in Defendants' Motions and Memoranda of Law in Support, the State's Oppositions and Memoranda of Law in Opposition, the *Pharmacy Defendants' Notice of Supplemental Authority* filed on June 21, 2022 (Transaction ID 67746756), the State's *Response* filed on June 23, 2022 (Transaction ID 67755204), the *Pharmacy Defendants' Notice of Supplemental Authority* filed on July 8, 2022 (Transaction ID 67804904), and the State's *Response* filed on July 11, 2022 (Transaction ID 67806525), the Panel previously denied the motions to dismiss, as set forth in the July 11, 2022, Order (Transaction ID 67809204).   The Panel has also reviewed and considered the Pharmacy Defendants' *Objections to the State's Proposed Findings of Fact and Conclusions of Law on Order Denying Pharmacy Defendants' Motions to Dismiss Complaints and Amended Complaints* (Transaction ID 67884238) filed on July 29, 2022, and Plaintiff's *Response* (Transaction ID 67886261) filed on August 1, 2022.  The Panel finds the Pharmacy Defendants' objections are unpersuasive, and makes the following findings of fact and conclusions of law in support of its decision:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.     The State has sued the Pharmacy Defendants in connection with their wholesale distribution and retail dispensing of prescription opioids in West Virginia, alleging that their unlawful and/or unreasonable conduct in both activities constituted unfair practices in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code §§ 46A-

---

[5] Defendant Walgreens Boots Alliance, Inc. separately moved to dismiss the Complaint for lack of personal jurisdiction (Transaction ID 66817018), but subsequently withdrew the motion (Transaction ID 67304457).

6-101 *et seq.*, and that they contributed to a public nuisance by helping to trigger and sustain the public health and safety crises of the opioid epidemic in West Virginia.

### The Legal Standard

2.      As explained by the Court in *John W. Lodge Distributing Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 245 S.E.2d 157 (1978):

> The purpose of a motion under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure is to test the formal sufficiency of the Complaint.  For purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff, and its allegations are to be taken as true.  Since common law demurrers have been abolished, pleadings are now liberally construed so as to do substantial justice.  W. Va. R. Civ. P. 8(f).  The policy of the rule is thus to decide cases upon their merits, and if the complaint states a claim upon which relief can be granted under any legal theory, a motion under Rule 12(b)(6) must be denied.

> * * *

> In view of the liberal policy of the rules of pleading with regard to the construction of plaintiff's complaint, and in view of the policy of the rules favoring the determination of actions on the merits, the motion to dismiss for failure to state a claim should be viewed with disfavor and rarely granted.  The standard which plaintiff must meet to overcome a Rule 12(b)(6) motion is a liberal standard, and few complaints fail to meet it.  The plaintiff's burden in resisting a motion to dismiss is a relatively light one.

*Id.* at 604-06, 158-59.

3.      A trial court considering a motion to dismiss under Rule 12(b)(6) must "liberally construe the complaint so as to do substantial justice."  *Cantley v. Lincoln Cnty. Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007) (citing W. Va. R. Civ. P. 8(f)).  "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.* at Syl. pt. 2 (*quoting* Syl. pt. 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977)).

**Application of Standard**

**A.      Medical Professional Liability Act and Opioid Dispensing-Based Claims**

4.      The State alleges that Defendants violated the WVCCPA and contributed to a public nuisance—the public health and safety crisis of the opioid epidemic in West Virginia— through their wholesale distribution and retail dispensing of opioids in West Virginia.  *See*, *e.g.*, *State v. CVS* First Amended Complaint ("CVS FAC") (Transaction ID 66994002), ¶¶ 178-99. They did so, the State alleges, by failing to maintain systems to prevent diversion and ensure that prescriptions were issued for legitimate purposes, including by not using their own statewide and national dispensing and claims data to enable pharmacists to assess opioid prescribing practices and trends.  *Id.*, ¶¶ 44-46, 50-57, 102-54, 167-72.

5.      Defendants argue that the Panel lacks subject matter jurisdiction over the State's claims based on opioid *dispensing* because these are "medical professional liability" claims governed by the Medical Professional Liability Act ("MPLA"), W. Va. Code §§ 55-7B-1 *et seq.*, and the State has not complied with the Act's prerequisites for filing suit.  *See, e.g.,* CVS Memo. of Law in Support of Motion to Dismiss Dispensing Claims ("CVS Dispensing MOL") (Transaction ID 67074618) at 7-11 (citing W. Va. Code § 55-7B-6).  Defendants do not raise this argument as to the State's claims based on opioid *distribution*.

6.      The Panel concludes that the MPLA does not apply to the State's WVCCPA and public nuisance claims based on opioid dispensing by Defendants through their pharmacy stores in West Virginia.

7.      The MPLA's prerequisites to suit apply only to a "medical professional liability action."  W. Va. Code § 55-7B-6(a).  "Medical professional liability" is a defined term:

> "Medical professional liability" means any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health

4

care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient.  It also means other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services.

W. Va. Code § 55-7B-2(i).

8.      The MPLA defines "Plaintiff" as "a patient or representative of a patient who brings an action for medical professional liability under this article," W. Va. Code § 55-7B-2(n), and "Patient" as "a natural person who receives or should have received health care from a licensed health care provider under a contract, express or implied."  W. Va. Code § 55-7B-2(m).

9.      The MPLA also defines "health care" services to include, in relevant part, "[a]ny act, service or treatment provided under, pursuant to or in the furtherance of a physician's care, a health care facility's plan of care, medical diagnosis or treatment[.]" W. Va. Code § 55-7B-2(e)(1).

10.     Thus, for the MPLA to apply, the plaintiff must be a "patient or representative of a patient" who is or was a "natural person" who suffered "death or injury" from the provision of or failure to provide "health care services" that are in furtherance of medical treatment, for which the plaintiff seeks tort or breach of contract damages and related relief.  The State is not such a plaintiff covered by the MPLA for at least three independent reasons.

11.     First, the State is not a patient or representative of a patient, as the Act requires for its provisions to apply.  Rather, the State filed these lawsuits in its capacity as sovereign charged to enforce State laws and protect the public health and safety.

12.     The State has express statutory authority to enforce the WVCCPA.  *See* W. Va. Code § 46A-7-108 ("The attorney general may bring an action to restrain a person from violating this chapter and for other appropriate relief."); § 46A-7-111(2) ("The attorney general may bring a civil action against a creditor or other person to recover a civil penalty for willfully violating

5

this chapter[.]").   It does so not as an injured consumer or the representative of injured consumers, but as sovereign charged with enforcing the Act to help ensure a fair and honest marketplace:

> [The Attorney General] is authorized to file suit independently of any consumer complaints, as a *parens patriae*, that is, as the legal representative of the State to vindicate the State's sovereign and quasi-sovereign interests, as well as the interests of the State's citizens.   Indeed, the fact that the Attorney General is acting to obtain disgorgement of ill-gotten gains, separate and apart from the interest of particular consumers in obtaining recompense, validates this action as a *parens patriae* action.

*State of West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 176 (4th Cir. 2011) (internal quotation marks and citation omitted).

13.     So, too, is the State, through its officers and agencies, empowered at common law to bring suit to remedy a public nuisance that is interfering with the public health and safety. *See, e.g., State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 242, 488 S.E.2d 901, 922 (1997) ("The [Department of Environmental Protection's] allegation of public nuisance does not encompass damages to property owned by the DEP nor does it encompass damages for personal injuries to the DEP.   Instead, the DEP is seeking damages for the harm caused to the public health, safety, and the environment.") (internal quotation marks omitted).

14.     Since the State brings its WVCCPA and public nuisance claims as sovereign vindicating the interests of the public, not as an injured patient or representative of an injured patient, the MPLA does not apply to these claims.

15.     Second, the conclusion that the MPLA does not apply is underscored by the fact that the State also does not seek damages.

16.     The Panel already has ruled that the State's WVCCPA statutory remedies of an injunction, equitable relief, and civil penalties are not damages, which the State has waived.  *See Order Regarding the State's Motion to Strike Defendants' Notices of Non-Party Fault* ("State NNPF Order") (Transaction ID 65820504) at 4 ("[T]he State seeks . . . civil penalties and equitable relief under the WVCCPA, not damages . . . .").

17.     The Panel also has ruled that the State's public nuisance remedy of prospective, equitable abatement likewise is not damages, which the State has waived.  *See id.* at 3, 4; *see also Order Granting Plaintiffs' Motion to Strike Defendants' Notices of Non-Party Fault* ("Cities-Counties NNPF Order") (Transaction ID 65807300) at 4-5 ("[T]he 'distinction between abatement of nuisances and recovery of damages for injuries occasioned by wrongful acts constituting nuisances' is both 'apparent' and 'vast.'") (quoting *McMechen v. Hitchman-Glendale Consol Coal Co.*, 88 W. Va. 633, 107 S.E. 480, 482 (1921)).

18.     The Supreme Court of Appeals of West Virginia considered the Panel's rulings on these points and left them undisturbed.  *See State ex rel. AmerisourceBergen Drug Corp. v. Moats*, 245 W. Va. 431, 443 and n.55, 859 S.E.2d 374, 386 and n.55 (2021) (defendants' argument concerning "joinder of legal and equitable claims" and right to jury trial "does not apply to the State, which has brought claims for public nuisance and violation of the WVCCPA.").

19.     The recent decision in *City of Huntington v. AmerisourceBergen Drug. Corp.*, No. 3:17-01362, ___ F. Supp. 3d ___, 2022 WL 2399876 (S.D. W. Va. July 4, 2022), does not warrant reconsideration of the Panel's rulings that the State's WVCCPA and public nuisance claims do not seek damages, as required under the MPLA.

20.     The Panel finds the discussions by the court in the federal multidistrict litigation (MDL) and in the *Restatement (Second) of Torts*' regarding the nature and scope of public nuisance abatement persuasive and applicable to this case. *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 WL 4043938, at \*2 (N.D. Ohio Aug. 26, 2019) ("Thus, the Court, exercising its equitable powers, has the discretion to craft a remedy that will require Defendants, if they are found liable, to pay the prospective costs that will allow Plaintiffs to abate the opioid crisis."); *id.*, ___ F. Supp. 3d ___, 2022 WL 671219, at \*27 (N.D. Ohio March 7, 2022) ("Even if as Defendants assert, they discontinued the conduct that led to the existence of the nuisance, they are still subject to liability for abatement of any ongoing consequential effects of the nuisance."); *Restatement (Second) of Torts* (1979), § 834 cmt. e ("[I]f the activity has resulted in the creation of a physical condition that is of itself harmful after the activity that created it has ceased, a person who carried on the activity that created the condition or who participated to a substantial extent in the activity is subject to the liability for a nuisance, for the continuing harm."). The remedy the State seeks here is not damages, but equitable abatement to which the MPLA does not apply.

21.     Third, the State's WVCCPA and public nuisance claims are not based on "health care services rendered," W. Va. Code §55-7B-2(i), in furtherance of a physician or health care facility's plan of care, medical diagnosis or treatment. § 55-7B(2)(e)(1). Rather, the State alleges that Defendants failed to discharge their duties as registrants under the federal and West Virginia Controlled Substances Acts to maintain "effective controls against diversion of controlled substances into *other than* legitimate medical, scientific, and industrial channels." 21 U.S.C. § 823(b)(1) (emphasis added); *see also* W. Va. Code § 60A-3-303(a)(1) (same), 21 C.F.R. § 1301.71(a), W. Va. C.S.R. § 15-2-5.1.1. This includes the requirement that dispensing

pharmacies operate systems to detect and block medically *illegitimate* prescribing.  *See* 21 C.F.R. § 1306.04(a), W. Va. C.S.R. § 15-2-8.4.1.  The State alleges that Defendants violated these duties by, *inter alia*, failing to use their own national and statewide dispensing and claims data to identify doctors with prescribing patterns that present red flags for diversion and *non-medical* use.  *See, e.g.*, CVS FAC, ¶¶ 44-46, 50-57, 102-54, 167-72.

22.     The federal and state regulations that the State alleges Defendants failed to comply with provide specifically that:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.  The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription.  An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription . . . .

21 C.F.R. § 1306.04(a); *see also* W. Va. C.S.R. § 15-2-8.4.1 (same).  The alleged failure of Defendants to prevent diversion by failing to investigate red flags of diversion and illegitimate prescribing does not fall under the MPLA's protections.  *Cf. East Main St. Pharmacy; Affirmance of Suspension Order*, 75 FR 66149-01, 66157, 2010 WL 4218766 (D.E.A. Oct. 27, 2010) ("'[A] pharmacist can know that prescriptions are issued for no legitimate medical purpose without his needing to know anything about medical science.'") (quoting *U.S. v. Hayes*, 595 F.2d 258, 261 n.6 (5th Cir. 1979)).  Since the duties underpinning the State's WVCCPA and public nuisance claims are not performed in furtherance of patient treatment, but pursuant to registrants' duties to prevent diversion outside of legitimate patient care, the MPLA does not apply to these claims.

23.     Defendants' arguments for broader application of the MPLA do not have merit.  CVS relies upon the Act's provision for claims involving controlled substances dispensing.  *See*

9

CVS Dispensing MOL at 9 (citing W. Va. Code § 55-7B-5(d)).  This provision, however, refers to claims "by or on behalf of a *person* whose *damages* arise as a proximate result of a violation of the Uniform Controlled Substances Act[.]" W. Va. Code § 55-7B-5(d) (emphasis added). These limitations echo and thus underscore those in the Act's provisions limiting its application to claims by or on behalf of patients for damages sustained from receiving medical treatment.

24.     Rite Aid's argument relying on the MPLA's "other claims" clause, Rite Aid Memo. in Support of its Motion to Dismiss Second Amended Complaint ("Rite Aid 2AC MOL") (Transaction ID 67072600) at 6 (citing W. Va. Code § 55-7B-2(i)), and authority applying it to an equitable claim, also is unavailing.  This provision covers "other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided[.]" W. Va. Code § 55-7B-2(i).  It thus does not *eliminate* the requirement of a plaintiff's tort or contract claim for damages resulting from the death or injury of a patient-natural person, but rather also captures other claims that are supplemental to that claim.  The authority Rite Aid cites demonstrates this.  *See State ex rel. W. Va. Univ. Hosps., Inc. v. Scott*, 246 W. Va. 184, 866 S.E.2d 350, 360 (2021) ("The 'health care' claim is the 'anchor,' it gets you in the door of MPLA application to allow for inclusion of claims that are 'contemporaneous to or related to' that claim, but still must be in the overall context of rendering health care services."); *Brown v. Ohio Valley Health Servs. & Educ. Corp.*, No. 20-0156, 2021 WL 2023532, at *3 (W. Va. May 20, 2021) (where injury victim filed negligence claim against hospital covered by MPLA, Act also covered co-plaintiff employer's equitable subrogation claim against hospital based on same injury).

25.     Defendants' reliance on two recent orders by the federal MDL court referencing the MPLA, *see Pharmacy Defendants' Notice of Supplemental Authority*, 6/21/21 (Transaction

ID 67746756), is misplaced.  In its first order, the MDL court ruled in denying remand that the MPLA applied to certain West Virginia city and county plaintiffs' claims against physicians, a pharmacist, and a pharmacy because those defendants fell under the Act's definition of "health care provider" in W. Va. Code § 55-7B-2(g).  *See In re Nat'l Prescription Opiate Litig., supra* (N.D. Ohio June 8, 2022) (Dkt. 4502) at 7 n.9.  The State specially appeared in that action and requested clarification concerning the decision's scope.  In response, the MDL court clarified that the "***sole*** argument raised by the seven West Virginia Plaintiffs in their remand motion, to support their assertion that the MPLA's 30-day notice requirement did not apply, was that they were not 'persons.'"  *In re Nat'l Prescription Opiate Litig., supra* (N.D. Ohio June 14, 2022) (Dkt. 4516) at 2 (emphasis in original).  The MDL court thus was not presented with and did not rule on the issues decided herein.

26.     Similarly, the decision in *State v. Judy's Drug Store, Inc.*, No. 16-C-54 (W. Va. Cir. Ct., Hardy Cnty. Nov. 8, 2019), relied upon by Defendants, addressed different types of claims.  *See id.* at 8, ¶ 25 ("Plaintiff seeks relief and damages allegedly resulting from the death or injury of persons . . . .").  The decision in *State v. Crab Orchard Pharmacy, Inc.*, No. 17-C-12-D (W. Va. Cir. Ct., Raleigh Cnty., March 8, 2019), held that the MPLA applies to a public nuisance claim "because the allegations in paragraph VI of the Complaint relate to the provision of health care," *id.* at 12, without addressing whether this claim was brought on behalf of individual patients or sought damages as opposed to equitable abatement relief.

27.     The Panel holds that the MPLA does not apply to the State's WVCCPA claims for an injunction, other equitable relief, and civil penalties or its public nuisance claims for equitable abatement because these claims are not brought by or on behalf of a patient and do not seek damages for a patient's death or injury in receiving medical services.

11

**B.** **Comprehensive Regulation and Federal or State Statutory Preemption**

28.     The Panel further rejects Defendants' arguments that purportedly comprehensive regulation of controlled substances distribution and dispensing under federal and state law preempt or otherwise preclude the State's WVCCPA and public nuisance claims.  *See* CVS Dispensing MOL at 23-26, 28-30; Rite Aid Dispensing MOL at 10-14; Walgreens Dispensing MOL at 18-24; Walmart MOL at 25-27, 30-32.

29.     First, the federal Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq.*, and U.S. Drug Enforcement Administration ("DEA") regulations do not preempt the State's West Virginia state-law claims.  The State seeks to hold Defendants liable for conduct that it alleges violates state law as well as the CSA.  *See, e.g.*, CVS FAC, ¶¶ 61-63, 66-67, 78, 94, 119, 182-83, 191.  The CSA specifically contemplates and preserves this type of state-law liability. The Act contains an express savings clause, titled "Application of State law," which provides that:

> No provision of this subchapter shall be construed as indicating an intent on the part of Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and the State law so that the two cannot consistently stand together.

21 U.S.C. § 903.  This savings clause alone demonstrates that the CSA does not occupy the field of controlled substances regulation and does not preempt liability under state law absent a positive conflict between the CSA and state law, which Defendants do not demonstrate.

30.     The DEA's regulatory guidance underscores this conclusion that the CSA and federal regulation do not *per se* preempt state-law liability for improper conduct in dispensing opioids.  In a 2006 policy statement titled "*Dispensing Controlled Substances for the Treatment of Pain*," the DEA explained that:

[I]t has been the case for more than 70 years that a practitioner who dispenses controlled substances for other than a legitimate medical purpose, or outside the usual course of professional practice, is subject to legal liability under both State and Federal law.

71 FR 52716-01, 52717, 2006 WL 2540907 (D.E.A. Sept. 6, 2006).

31.     In light of the statutory command and DEA statement, courts uniformly have rejected the argument that the CSA and comprehensive DEA regulation preempt state-law public nuisance and consumer protection statute claims based on diversion-control failures in the distribution or dispensing of prescription opioids. *See City and Cnty of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 662 (N.D. Cal. 2020) (holding that 21 U.S.C. § 903 "precludes any argument that Congress intended to preempt state laws that enforce the CSA absent a positive conflict" and that "[n]o such conflict exists" with respect to state-law public nuisance claims); *In re Nat'l Prescription Opiate Litig.*, 2019 WL 4178591, at *12 (N.D. Ohio Sept. 3, 2019) ("The Court has previously rejected this obstacle preemption argument, albeit with respect to the FDA, and now does so with respect to the DEA."); *State of South Dakota v. Purdue Pharma L.P.*, No. 32CIV18-000065, 2021 WL 5873046, at *4 (S.D. Cir. Ct. Jan. 13, 2021) ("In 21 U.S.C. § 903, the [CSA] contemplates that states' traditional enforcement of tort law will supplement the federal enforcement scheme."); *State of New Mexico v. Purdue Pharma L.P.*, No. D-101-CV-2017-02541 (N.M. Dist. Ct. July 1, 2022) at 4 ("[T]he Court rejects the argument that the State's claims are preempted because they purportedly seek to enforce the [CSA] . . . .").

32.     The Panel thus holds that the CSA and DEA regulation do not preempt or otherwise preclude the State's WVCCPA and public nuisance claims based on Defendants' alleged diversion-control failures in their distribution and/or dispensing of prescription opioids as controlled substances.

33. Second, the West Virginia Uniform Controlled Substances Act ("WVCSA"), W. Va. Code §§ 60A-1-101 *et seq.*, likewise does not preempt or otherwise preclude the State's WVCCPA and public nuisance claims. Defendants argue that both claims are precluded by the WVCSA's grant of exclusive enforcement authority to the West Virginia Board of Pharmacy. *See, e.g.,* CVS Dispensing MOL at 23, 28. The Panel has rejected this argument as applied to common law negligence claims, as other courts have with respect to WVCCPA and public nuisance claims.

34. In its October 31, 2019, *Order Denying Pharmacy Defendants' Motion to Dismiss Plaintiffs' Complaint*, entered in Civil Action Nos. 18-C-222 MSH and 18-C-233 MSH through 18-C-236 MSH ("Pharmacies Order") (Transaction ID 64374772), the Panel adopted as law of the case the ruling by the Circuit Court of Marshall County rejecting several Pharmacy Defendants' assertion that a claim incorporating WVCSA standards was an impermissible enforcement action. This ruling explained as follows:

> The Court finds and concludes that Plaintiffs are not attempting to assert a private right of action under the WVCSA. Instead, they rely on the WVCSA to help establish a standard of care for their common-law negligence claim, which is permissible under the law.

*Id.* at Ex. A, p.6 ¶ 15. The Panel adopted and incorporated this ruling as law of the case in this mass litigation. *Id.* at 3.

35. In *State ex rel. Morrisey v. AmerisourceBergen Drug Corp.*, No. 12-C-141, 2014 WL 12814021 (W. Va. Cir. Ct., Boone Cnty Dec. 12, 2014), *writ denied*, *State ex rel. AmerisourceBergen Drug Corp. v. Thompson*, No. 15-1026 (W. Va. Jan. 5, 2016), Judge Thompson ruled that the State may base a WVCCPA unfair practices claim upon defendant opioid distributors' conduct violating their statutory and regulatory duties to maintain effective controls against diversion. While the defendants argued that "not all violations of a statute or

regulation are unfair[,]" *id.* at *14, the court ruled that the "question of 'unfairness' is decided on a case-by-case basis" and denied dismissal of the claim.  *Id.*

36.     The court in *State v. AmerisourceBergen* ruled correctly that the State may base a WVCCPA unfair practices claim upon a defendant's conduct violating WVCSA statutory and regulatory duties to maintain effective controls against diversion of controlled substances.  The WVCCPA declares "unfair or deceptive acts or practices in the conduct of any trade or commerce" to be "unlawful."  W. Va. Code § 46A-6-104.  The Act provides a non-exclusive definition of what may constitute an unfair practice.  W. Va. Code § 46A-6-102(7).  The Act further provides that "[i]t is the intent of the Legislature that, in construing this article, the courts be guided by the policies of the Federal Trade Commission [FTC] and interpretations given by the [FTC] and federal courts to [15 U.S.C. § 45(a)(1)], as from time to time amended . . . ."  W. Va. Code § 46A-6-101(1).  The FTC has considered in assessing whether an act or practice is "unfair" under the federal statute "whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, common law, or otherwise . . . ."  FTC, *Statement of Basis and Purpose of Trade Regulation Rule*, 29 FR 8324, 8355 (1964).  Conduct prohibited by the WVCSA thus may be a predicate for a WVCCPA unfair practices claim.

37.     So, too, may conduct prohibited by the WVCSA support a public nuisance claim.  "A public nuisance is an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons."  *Duff v. Morgantown Energy Ass'n*, 187 W. Va. 712, 716, 421 S.E.2d 253, 257 (1992) (internal quotation marks and citation omitted).  The Supreme Court of Appeals has found that "this definition is consistent with the *Restatement (Second) of Torts* § 821B(1) (1979), which defines a public nuisance as 'an unreasonable interference with a right

15

common to the general public.'"  *Id.* at 716 n.6, 421 S.E.2d at 257 n.6.  Under the *Restatement*

provision, "[c]ircumstances that may sustain a holding that an interference with a public right is

unreasonable include . . . whether the conduct is proscribed by a statute, ordinance or

administrative regulation[.]" *Restatement (Second) of Torts* § 821B(2)(b).  Although unlawful

conduct is not *required*, *see Duff*, 187 W. Va. at 716, 421 S.E.2d at 257 (a "business lawful in

itself [may] constitute[] a public nuisance"), this is a permissible way to prove that conduct

supports public nuisance liability.  *See State v. AmerisourceBergen*, 2014 WL 12814021, at *9

(denying dismissal of State's public nuisance claim alleging that opioid distributor defendants

"failed to provide effective controls against the diversion of controlled substances and failed to

operate a system that discloses suspicious orders of controlled substances").  Conduct prohibited

by the WVCSA thus may be a predicate for a public nuisance claim.

38.     The Panel holds that the WVCSA does not preempt or otherwise prohibit the

State's WVCCPA and public nuisance claims alleging in part that the Pharmacy Defendants

violated their statutory and regulatory duties to maintain effective controls against diversion of

the prescription opioids they distributed and dispensed in West Virginia.

39.     Third, none of the other state statutory provisions invoked by the Pharmacy

Defendants supports dismissal of the State's claims.

40.     Defendants contend that W. Va. Code § 30-5-21(a), part of the Larry W. Border

Pharmacy Practice Act ("Pharmacy Act"), W. Va. Code §§ 30-5-1 *et seq.*, bars any common-law

claim based on prescription drug dispensing.  *See, e.g.*, CVS Dispensing MOL at 29.  This

provision addresses responsibility for the "quality of all drugs, chemicals and medicines" sold.

W. Va. Code § 30-5-21(a).  The Panel previously rejected the argument that this provision

precludes claims based on controlled substances *distribution*.  In its *Order Denying the*

*Distributor Defendants' Motion to Dismiss Plaintiffs Complaint*, entered in Civil Action Nos. 18-C-222 MSH and 18-C-233 MSH through 18-C-236 MSH  ("Distributors Order") (Transaction ID 64374611), *writ denied*, *State ex rel. AmerisourceBergen Drug Corp. v. Moats*, No. 19-1051 (W. Va. Jan. 30, 2020), the Panel addressed the Circuit Court of Marshall County's ruling that § 30-5-21(a) "does not apply to the instant claims because claims against Defendants arise out of their duties to prevent diversion as distributors of controlled substances rather than the 'quality' of the drugs sold at retail," *id.* at Ex. A, p. 11 ¶ 27, and incorporated and adopted this ruling as law of the case in this mass litigation.  *Id.* at 2-3.  Having previously held that this provision does not apply to or prohibit opioid *distribution* claims, the Panel now holds that W. Va. Code § 30-5-21(a) likewise does not apply to or prohibit opioid *dispensing* claims alleging failure to maintain effective controls against diversion because these claims do not involve the "quality" of the opioid drugs sold at retail.

41.     Defendants also contend that W. Va. Code § 55-7-23 bars any common-law claim based on prescription drug dispensing.  *See, e.g.*, CVS Dispensing MOL at 29-30.  This provision addresses liability "to a patient or third party for injuries sustained as a result of the ingestion of a prescription drug . . . ."  W. Va. Code § 55-7-23(a).  It does not apply to the State's public nuisance claims alleging failure to maintain effective controls against diversion.  These claims are not derivative of anyone's injuries sustained from ingesting opioids.  Rather, they are based on the need to remediate community harms of an opioid epidemic allegedly triggered and sustained by Defendants' conduct.  *See In re Nat'l Prescription Opiate Litig., supra*, 2018 WL 6628898, at *6 (N.D. Ohio Dec. 19, 2018) ("Defendants claim that Plaintiffs' asserted injuries are 'necessarily derivative of harms to individual opioid users . . . .'  . . . [However,] Plaintiffs have alleged a plausible claim that their injuries are the direct result of Defendants' creation of

an illicit opioid market within their communities.  Plaintiffs' asserted economic injuries are borne by them and not passed-on by any intermediate party . . . .").  W. Va. Code § 55-7-23 does not apply to or prohibit the State's claims.

42.    Defendants also contend that W. Va. Code § 55-7-31(b) bars any common-law claim based on prescription drug dispensing.  *See, e.g.*, CVS Dispensing MOL at 30.  This provision addresses a "product liability action," W. Va. Code § 55-7-31(b), defined as a:

> [C]ivil action brought against a . . . seller of a product, based in whole or in part on the doctrine of strict liability in tort, for or on account of personal injury, death or property damage caused by or resulting from: (A) The manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, marketing or sale of a product; (B) The failure to warn or protect against a danger or hazard in the use, misuse or unintended use of a product; or (C) The failure to provide proper instructions for the use of a product.

W. Va. Code § 55-7-31(a)(4).  The State does not allege any product defect, failure to warn, or failure to instruct, by Defendants.  Rather, the State alleges that Defendants failed to maintain effective controls against diversion of the opioids they distributed and dispensed in West Virginia. W. Va. Code § 55-7-31 does not apply to the State's claims.

43.    The Panel thus holds that the CSA, the WVCSA, and state pharmacy practice and product liability statutes do not preempt the State's WVCCPA and public nuisance claims.

## C.    The State's WVCCPA Public Enforcement Claims

44.    The State alleges that the Pharmacy Defendants committed unfair or deceptive acts or practices in violation of the WVCCPA through their failures to maintain effective controls against diversion of the prescription opioid drugs they distributed into West Virginia and dispensed and sold through their West Virginia pharmacy stores.  *See, e.g.*, CVS FAC, ¶¶ 178-86.  Defendants raise numerous arguments for dismissal of the State's WVCCPA claims.

18

45.     First, Defendants argue that "the [WV]CCPA does not apply to commerce involving prescription medications, because licensed prescribers---not consumers—drive prescription medication purchases."  CVS Dispensing MOL at 3 (citing *White v. Wyeth*, 227 W. Va. 131, 141, 705 S.E.2d 828, 838 (2010)); *see also id.* at 12-17 ("Conduct involving prescription drugs is not actionable under the [WV]CCPA."); Rite Aid Dispensing MOL at 16-19 (same substantive argument); Walgreens Dispensing MOL at 9-14 (same); Walmart MOL at 12-17.  The Panel rejects this argument as contrary to well-established West Virginia law.

46.     The WVCCPA is a remedial statute that, by its express terms, "shall be liberally construed so that its beneficial purposes may be served."  W. Va. Code § 46A-6-101(1).  The Supreme Court of Appeals and other courts thus have repeatedly addressed WVCCPA public enforcement claims by the State against sellers and distributors of prescription drugs, including Defendants in this and other cases in this mass litigation, without questioning the Act's application.  *See State ex rel. McGraw v. Johnson & Johnson*, 226 W. Va. 677, 680 and 684, 704 S.E.2d 677, 680 and 684 (2010) (WVCCPA claim involving deceptive communications to healthcare providers about prescription medications; addressing availability of civil penalties); *State v. CVS, supra*, 646 F.3d at 171 (WVCCPA claim involving unlawful acts in the sale of generic prescription drugs; addressing federal court jurisdictions); *State v. AmerisourceBergen, supra*, 2014 WL 12814021, at *14 ¶ 82 (WVCCPA claim involving improper and illegal distribution of prescription opioid pills without required diversion controls; denying motion to dismiss).

47.     The Supreme Court of Appeals' decision in *White v. Wyeth, supra*, is not to the contrary.  There, the Court held that "the *private* cause of action afforded consumers under West Virginia Code § 46A-6-106(a) does not extend to prescription drug purchases" because of the

unlikelihood that a private consumer could establish causation of a loss in connection with a prescription drug purchase where "[t]he intervention by a physician in the decision-making process necessitated by his or her exercise of judgment whether or not to prescribe a particular medication . . . protects consumers in ways respecting efficacy that are lacking in advertising campaigns for other products." *Id.* (emphasis added). *White*'s analysis of private consumer claims does not apply to the State's public enforcement claims. The difference between the two types of claims is critical.

48. The State in a public enforcement action like those here does not have to prove loss-causation, reliance, or damages, which was the basis for the ruling in *White*. Instead, when a defendant has committed an unfair or deceptive act or practice prohibited by the WVCCPA, the State, through the Attorney General, "may bring a civil action to restrain [the defendant] from violating [the WVCCPA] and for other appropriate relief." W. Va. Code § 46A-7-108. The phrase "other appropriate relief" in § 108 "indicates that the legislature meant the full array of equitable relief to be available in suits brought by the Attorney General." *State ex rel. McGraw v. Imperial Mktg.*, 203 W. Va. 203, 215-16, 506 S.E.2d 799, 811-12 (1998) ("*Imperial Mktg. II*"). This includes disgorgement of ill-gotten gains. *See, e.g., State v. CVS*, 646 F.3d at 176. It also includes civil penalties for repeated and willful violations. W. Va. Code § 46A-7-111(2). To obtain these remedies, the State must submit proof of the defendant's conduct, and nothing more. *See, e.g., State v. Johnson & Johnson*, 226 W. Va. at 684, 704 S.E.2d at 684 ("If the attorney general can prove that a defendant has engaged in a course of repeated and willful violations of the Act, then a court may assess a civil penalty of no more than five thousand dollars for each violation."). Since the State need not prove loss-causation, reliance, or damages

for its WVCCPA public enforcement claims, *White v. Wyeth* is inapposite, and the State may proceed on its claims involving distribution and dispensing of prescription drugs.

49.     Second, Defendants argue that the State's WVCCPA claims must be dismissed for want of a consumer transaction.  *See* CVS Dispensing MOL at 21-22; Rite Aid of Maryland MOL at 8-11; Rite Aid of West Virginia MOL at 8-11; Walgreens Distribution MOL at 11-13; Walmart MOL at 21-24.  This argument, too, relies upon authority addressing *private* plaintiff claims under the WVCCPA.  *See* CVS Dispensing MOL at 21 (citing *Harper v. Jackson Hewitt, Inc.*, 227 W. Va. 142, 145, 706 S.E.2d 63, 66 (2010) (private plaintiff class action); *Cather v. Seneca-Upshur Petroleum, Inc.*, No. 90CV139, 2010 WL 3271965, at *7-8 (N.D. W. Va. Aug. 18, 2010) (same).  This authority does not address the requirements for State public enforcement claims under the WVCCPA like those here.

50.     Unlike the WVCCPA's private-right-of-action provision, W. Va. Code § 46A-6-106(a), the Act's public enforcement provisions do not on their face require proof of a consumer transaction.  *See* W. Va. Code § 46A-7-108 ("The Attorney General may bring a civil action to restrain a person from violating this chapter and for other appropriate relief."); W. Va. Code § 46A-7-111(2) ("The Attorney General may bring a civil action against a creditor or other person to recover a civil penalty for willfully violating this chapter.").  Accordingly, courts addressing the State's public enforcement authority under the WVCCPA have held that the Act does not require the State to allege a consumer transaction.  *See, e.g. State ex rel. McGraw v. Minn. Mining & Mfg. Co. (3M Co.)*, 354 F. Supp. 2d 660, 667 (S.D. W. Va. 2005 ("Plaintiff's CCPA claims accuse defendants of unfair methods of competition and/or unfair [or] deceptive acts or practices in violation of West Virginia Code section 46A-6-104, as defined in 46A-6-102.  The claims do not appear to require the presence of a consumer or a consumer transaction.") (citation

omitted); *State v. AmerisourceBergen*, 2014 WL 12814021, at *15 ("W. Va. Code § 46A-6-104 does not require a consumer or consumer transaction.") (internal quotation marks omitted); *see also State v. CVS*, 646 F.3d at 176 ("[The Attorney General] is authorized to file suit independently of any consumer complaints, as a *parens patriae*, that is, as the legal representative of the State to vindicate the State's sovereign and quasi-sovereign interests . . . ."). The Panel thus holds that the State need not allege or prove a consumer transaction to proceed on a WVCCPA public enforcement claim.

51.     Third, certain Defendants argue that the State's WVCCPA claims based on opioid distribution must be dismissed for failure to allege transactions that occur in the scope of trade or commerce.  *See* CVS Distribution MOL at 15-16; Walgreens Distribution MOL at 14-17.[6]  The WVCCPA requires the occurrence of an unfair method of competition or unfair or deceptive act or practice "in the conduct of any trade or commerce."  W. Va. Code § 46A-6-104.  The State, however, readily satisfies this requirement for its opioid distribution-based claims.

52.     The WVCCPA defines "'Trade' or 'commerce'" to encompass "the advertising, offering for sale, sale *or distribution of any goods* or services" and to "include any trade or commerce, directly or indirectly, affecting the people of this state."  W. Va. Code § 46A-6-102(6) (emphasis added).  Defendants' distribution of opioid pills to their pharmacy stores in West Virginia is, by definition, the distribution of a good affecting the people of West Virginia. CVS nonetheless contends that this definition's inclusion of "advertising" and "offering for sale" must be read to limit the meaning of "distribution" to apply only to "arms-length commercial transactions between third parties, not to CVS's internal transfer of inventory from its own distribution centers to its own pharmacies."  CVS Distribution MOL at 16; *see also* Walgreens

---

[6] These Defendants do not make this argument with respect to the State's claims based on opioid *dispensing*.

Distribution MOL at 16 (same in substance). This argument fails because the Act includes the distribution of goods in the disjunctive, separate and apart from advertising or sales, and further provides that the covered distribution of goods may "directly or indirectly[] affect[] the people of this state." W. Va. Code § 46A-6-102(6). This definition does not require direct advertising or sales. The State therefore satisfies the WVCCPA's "trade or commerce" requirement for its claims based on Defendants' distribution of opioid pills in West Virginia.

53. Fourth, Defendants argue that the State does not adequately allege an unfair or deceptive act or practice violating the WVCCPA. *See* CVS Dispensing MOL at 17-21; Rite Aid Dispensing MOL at 19-22; Walgreens Dispensing MOL at 14-17; Walmart MOL at 18-21. This argument, too, has no merit.

54. The WVCCPA declares "unfair or deceptive acts or practices in the conduct of any trade or commerce" to be "unlawful." W. Va. Code § 46A-6-104. The Act provides a non-exclusive definition of what may constitute an unfair practice. W. Va. Code § 46A-6-102(7). The Act further provides that "[i]t is the intent of the Legislature that, in construing this article, the courts be guided by the policies of the [FTC] and interpretations given by the [FTC] and federal courts to [15 U.S.C. § 45(a)(1)], as from time to time amended . . . ." W. Va. Code § 46A-6-101(1). The federal statute assesses unfairness based on whether "the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n). The FTC may "consider established public policies as evidence to be considered with all other evidence[,]" although these "may not serve as a primary basis for such determination." *Id.* The "likely . . . consumer injury" that supports finding unfairness may include "[u]nwarranted health and safety risks[.]" FTC, *Statement of Policy,*

*supra*, 104 F.T.C. 949, 1984 WL 565290, at *97.  The FTC also has considered "whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, common law, or otherwise . . . ."  FTC, *Statement of Basis, supra*, 29 FR at 8355.

55.     Based on the foregoing, Judge Thompson in *State v. AmerisourceBergen, supra*, held that the State's allegation of a failure to maintain effective controls against diversion in the distribution of prescription opioids supported an unfair practices claim under the WVCCPA. 2014 WL 12814021 at *14 ("The State has pled that Defendants have profited off the prescription drug epidemic by ignoring state-law anti-diversion regulations, thereby supplying Pill Mills.  That meets the pleading requirement of unfairness at this stage.").

56.     This Panel ruled similarly in this litigation in denying motions by Manufacturer Defendants to dismiss the State's WVCCPA claims alleging in part their failure to maintain effective controls against diversion.  *See* Order Denying Allergan and Teva Defendants' Motions to Dismiss State's First Amended Complaint ("Teva Order") (Transaction ID 65887418) at 3; Order Denying Janssen Defendants' Motion to Dismiss State's Complaint ("Janssen Order") (Transaction ID 65899715) at 4.

57.     In urging a contrary ruling here, Defendants contend that the common thread running through the WVCCPA's enumerated examples of "unfair or deceptive acts or practices" is that the conduct deceives, misleads, or confuses a consumer.  *See, e.g.,* CVS Dispensing MOL at 18 (citing W. Va. Code § 46A-6-102(7)), 20 ("[T]here is no support for the proposition that the quantity of a lawful product, in itself, is deceptive.").  This argument fails because the WVCCPA expressly provides with respect to these enumerated examples of "unfair or deceptive acts or practices" that this concept "means and includes, *but is not limited to*, any one or more of

the following[.]" W. Va. Code § 46A-6-102(7) (emphasis added); *see also State v. AmerisourceBergen*, 2014 WL 12814021 at *14 ("This language indicates the list is not exclusive, and other conduct can constitute unfair or deceptive acts or practices.").

58.     The Panel therefore holds that the State sufficiently pleads an "unfair practices" claim under the WVCCPA based on its allegations that the Pharmacy Defendants failed to maintain effective controls against diversion in their distribution and dispensing of prescription opioid pills in West Virginia.

59.     Fifth, Defendants seek dismissal of the State's WVCCPA claims for failure to plead with particularity as required by W. Va. R. Civ. P. 9(b) for claims sounding in fraud.  *See, e.g.*, CVS Dispensing MOL at 22-23.  A WVCCPA public enforcement claim by the State does not sound in fraud.  *Compare* W. Va. Code § 46A-6-102(7)(M) (misrepresentation or concealment of material facts can be an unfair or deceptive act or practice "whether or not any person has in fact been misled, deceived or damaged thereby"), *with Sneberger v. Morrison*, 235 W. Va. 654, 670, 776 S.E.2d 156, 172 (2015) ("essential elements" of fraud include "that plaintiff relied on [material and false representation] and was justified under the circumstances in relying on it" and that plaintiff "was damaged because he relied on it") (internal quotation marks and citation omitted).  The Panel thus has ruled in this litigation that Rule 9(b) does not apply to the State's WVCCPA claims against other Defendants.  *See* Teva Order (Transaction ID 65887418) at 3.  Other courts have ruled likewise that Rule 9(b) does not apply to statutory unfair practices claims.  *See, e.g., Moore v. RoundPoint Mortg. Serv. Corp.*, No. 2:18-cv-01222, 2018 WL 4964362, at *3 (S.D. W. Va. Oct. 15, 2018) ("The court finds, however, that [Federal] Rule 9(b) does not apply to the plaintiffs' allegation that RoundPoint violated Section 46A-2-128, as the plaintiffs allege only that RoundPoint used unfair or unconscionable means to collect

a debt, which does not require a showing of fraud."); *see also FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1293 (D. Minn. 1985) (fraud elements do not apply to FTC action).  The Panel thus holds that Rule 9(b) does not apply to the State's WVCCPA public enforcement claims against the Pharmacy Defendants.

60.     Moreover, even if Rule 9(b) did apply, the State's detailed allegations of how Defendants failed to maintain effective controls against diversion of the opioids they distributed and dispensed provide more than sufficient detail of the circumstances of the alleged unlawful conduct to give Defendants notice of the claims against them.  *See, e.g.*, CVS FAC, ¶¶ 44-154 (systematic failures to maintain effective controls against diversion in distribution and dispensing of prescription opioids), ¶¶ 167-72 (failures in West Virginia).  These allegations would readily satisfy Rule 9(b) if it did apply, which it does not.

61.     The Panel thus holds that the State pleads viable WVCCPA public enforcement claims against the Pharmacy Defendants.

**D.     The State's Public Nuisance Claims**

62.     The State alleges that the Pharmacy Defendants contributed to a public nuisance because their failures to maintain effective controls against diversion in their distribution and dispensing of prescription opioid pills helped to trigger and sustain the oversupply and diversion of these highly addictive drugs that have fueled the public health and safety harms of the opioid epidemic in West Virginia.  *See, e.g.*, CVS FAC, ¶¶ 187-199.

63.     West Virginia defines public nuisance as "'an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons.'"  *Duff, supra*, 187 W. Va. at 716, 421 S.E.2d at 257 (quoting *Hark v. Mountain Fork Lumber Co.*, 127 W. Va. 586, 595-96, 34 S.E.2d 348, 354 (1945)).  The Supreme Court of Appeals has found that "this definition is

consistent with the *Restatement (Second) of Torts* § 821B(1) (1979), which defines a public nuisance as 'an unreasonable interference with a right common to the general public.'" *Duff*, 187 W. Va. at 716 n.6, 421 S.E.2d at 257 n.6.  Under the *Restatement (Second)*:

> Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
>
> (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
>
> (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or
>
> (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

*Restatement (Second) of Torts* § 821B(2).  Although unlawful conduct is not *required* to establish public nuisance, *see Duff*, 187 W. Va. at 716, 421 S.E.2d at 257 (a "business lawful in itself [may] constitute[] a public nuisance"), this is one of the permissible ways to prove that an interference is unreasonable in support of public nuisance liability.

64.     The Panel has issued orders in this mass litigation denying motions by the Pharmacy, Distributor, and Manufacturer Defendants for dismissal of or summary judgment on the State's or City and County Plaintiffs' public nuisance claims.  *See* Pharmacies Order, *supra*, at 3 and Ex. A pp. 11-12; Distributors Order, *supra*, at 3 and Ex. A pp. 13-14; *Order Denying Manufacturer Defendants' Joint Motion to Dismiss Plaintiffs' Complaint* ("Manufacturers Order") (Transaction ID 64374079) at 2-3 and Ex. A p. 12; Teva Order, *supra*, at 2-3; Janssen Order, *supra*, at 1-4; *Amended Order Regarding Rulings Issued During March 25, 2022, Pretrial Conference* ("Manufacturers MSJ Order") (Transaction ID 67650385) at 4 (denying summary judgment for Manufacturer Defendants on State's public nuisance claims).

65.     The Panel recently set forth comprehensive findings and legal conclusions concerning the application of public nuisance to governmental opioid claims.  *See Findings of Fact and Conclusions of Law and Order Denying Defendants' Motion for Summary Judgment re "Factual Issue #2"* ("Distributors MSJ Order 2") (Transaction ID 67786397) at 1-9 (denying summary judgment for Distributor Defendants on City and County Plaintiffs' public nuisance claims).  That decision outlined the historical background of public nuisance claims in West Virginia and in nationwide opioid litigation and explained why contrary decisions are unpersuasive.  *Id.* at 1-6.  The Panel reaffirms those conclusions and incorporates them here.

66.     The Pharmacy Defendants nonetheless raise numerous arguments for dismissal of the State's public nuisance claims.  The Panel addresses each of these arguments in turn.

67.     First, Defendants seek dismissal on the ground that the State does not allege harm to real property.  *See, e.g.*, CVS Distribution MOL at 24-25; CVS Dispensing MOL at 27 ("This public nuisance claim . . . amounts to nothing more than an attempt to stretch the doctrine of public nuisance far beyond its property-based roots to third party abuse or misuse of lawful products.").  This argument fails first as a factual matter because the State *does* allege damage to public property and resources caused by Defendants' conduct.  *See, e.g.*, CVS FAC, ¶ 176 (harms suffered by State include "children placed in foster care, babies born addicted to opioids, criminal behavior, poverty, [and] property damage"), ¶ 192 ("The greater demand for emergency services, law enforcement, addiction treatment, and other social services places an unreasonable burden on governmental resources.").  These allegations show that the State may be able to demonstrate that an oversupply and the diversion of prescription opioids and an epidemic of opioid misuse and addiction have contributed to public harms that include loss of the use of public space, property, and resources due to drug abuse and related criminal behavior.  *Cf. In re*

28

*Opioid Litigation: Manufacturer Cases*, No. 21-C-9000-MFR (April 5, 2022 Transcript of Proceedings) at 447 17-21 ("We also had people that were deliberately injecting themselves in shopping mall bathrooms, gas stations, other places . . . ."), at 489:8-12 ("As part of the Department of Health and Human Resources, we are also responsible for foster care, and we found that a substantial portion of foster care was – was being driven – increases being driven by [the] substance use crisis . . . .") (testimony Rahul Gupta, M.D.).  Based on the foregoing, the Panel finds that the State alleges harm to public property and resources. These allegations must be evaluated on a fuller factual record.

68.     Moreover, even if the State had not alleged property damage as one of its harms, it need not do so to state a claim for public nuisance.  The Panel has repeatedly so held.  *See* Pharmacies Order at Ex. A p.11 ("The Court finds and concludes that public nuisance is not limited to property disputes and that West Virginia courts have applied the public nuisance doctrine in numerous contexts, including in opioids cases like this."); Distributors Order at Ex. A p. 13 (same); Manufacturers MSJ Order at 4 ("The Court further notes that at least 22 states have found public nuisance claims based on the marketing of prescription opioids to be viable."); Distributors MSJ Order 2 at 1-6 (rejecting argument that "governmental public nuisance claims are limited to claims arising out of the use of property").  So, too, have other courts.  *See Lemongello v. Will Co., Inc.*, No. 02-cv-2952, 2003 WL 21488208, at *2 (W. Va. Cir. Ct. June 19, 2003) ("This Court finds that West Virginia law does not necessarily involve interference with use and enjoyment of land."); *State v. AmerisourceBergen*, 2014 WL 12814021, at *9 (denying dismissal of State's public nuisance claim based on same public health and safety harms as State alleges herein); *see also Restatement (Second) of Torts* § 821B cmt. h ("Unlike a private nuisance, a public nuisance does not necessarily involve interference with use and

enjoyment of land."). These rulings and authority are consistent with the Supreme Court of Appeals' recognition that "nuisance is a flexible area of the law that is adaptable to a wide variety of factual situations." *Sharon Steel Corp. v. City of Fairmont*, 175 W. Va. 479, 483, 334 S.E.2d 616, 621 (1985).

69.     The decision in *City of Huntington, supra*, does not warrant reconsideration of the Panel's rulings that public nuisance does not require harm to real property or of the authority on which they are based. In *City of Huntington,* the court found that "the West Virginia Supreme Court has only applied public nuisance law in the context of conduct that interferes with public property or resources" and the "extension of the law of nuisance to cover the marketing and sale of opioids is inconsistent with the history and traditional notions of nuisance." 2022 WL 2399876 at *57. The Panel is not persuaded by this finding.

70.     The *City of Huntington's* placement of an artificial external constraint on the common law cause of action for public nuisance is inconsistent with the Supreme Court of Appeals' longstanding recognition that a public nuisance is *any* act or condition that "'operates to hurt or inconvenience an indefinite number of persons[,]'" *Duff*, 18 W. Va. at 716, 421 S.E.2d at 257 (quoting *Hark*, 127 W. Va. at 595-96, 34 S.E.2d at 354), and that "nuisance is a flexible area of the law that is adaptable to a wide variety of factual situations." *Sharon Steel*, 175 W. Va. at 483, 334 S.E.2d at 621.

71.     In any event, even under the *City of Huntington* court's reformulation of public nuisance to require "conduct that interferes with public property or resources," the State sufficiently alleges interference with public property or resources. *See, e.g.*, CVS FAC, ¶¶ 12-15, 173-77, 192. Thus, the decision does not support dismissal of the State's public nuisance claims even on its own terms.

72.     Second, Defendants also seek dismissal on the ground that the State does not identify a public right recognized by West Virginia law with which they interfered.  *See, e.g.*, CVS Distribution MOL at 25; CVS Dispensing MOL at 33 n.15.   The Panel repeatedly has rejected this argument in this mass litigation, as have other courts addressing the same type of claim.  *See* Distributors MSJ Order 2 at 7; Pharmacies Order at Ex. A p. 11 ("The Court further finds and concludes that Plaintiffs have adequately alleged that Defendants interfered with a public right."); Distributors Order at Ex. A p. 13(same); *State v. AmerisourceBergen*, 2014 WL 12814021, at *9 (allegations that failure to maintain effective controls against diversion of opioids "injuriously affects the safety, health, or morals of the public, or works some substantial annoyance, inconvenience, or injury to the public" are held to "fit squarely within the definition of a public nuisance under West Virginia law").

73.     These rulings align with the Supreme Court of Appeals' recognition that a public nuisance is an act or condition that "'operates to hurt or inconvenience an indefinite number of persons[,]'" *Duff*, 18 W. Va. at 716, 421 S.E.2d at 257 (quoting *Hark*, 127 W. Va. at 595-96, 34 S.E.2d at 354), and that "[a] public nuisance action usually seeks to have some harm which affects the public health and safety abated." *Kermit Lumber, supra*, 200 W. Va. at 245, 488 S.E.2d at 925.

74.     The Panel thus holds that the State pleads viable public nuisance claims based on unreasonable interference with public health, safety, peace, comfort, and/or convenience, and that the State's separate allegations of harm to public property and resources are sufficient though not necessary to support these claims.

75.     Third, Defendants also seek dismissal because they contend that the State does not sufficiently allege proximate causation of the public nuisance.  *See, e.g.*, CVS Distribution

MOL at 21-24; CVS Dispensing MOL at 30-33.  This argument fails as grounds for dismissal on the pleadings.  "The question of proximate causation is ordinarily a factual one" that is "within the province of the jury."  *Anderson v. Moulder*, 183 W. Va. 77, 89-90, 394 S.E.2d 61, 73-74 (1990) (internal quotation marks and citation omitted).

76.     The Panel repeatedly has rejected this argument for dismissal or summary judgment in this mass litigation.  *See* Pharmacies Order at Ex. A pp. 4-6; Distributors Order at Ex. A pp. 11-13; Manufacturers Order at Ex. A pp. 6-7; *see also* Findings of Fact and Conclusions of Law and Order Denying Distributor Defendants' Motion for Summary Judgement re "Factual Issue #1" (Distributors MSJ Order 1) (Transaction ID 67786183) at 11-13 ("An allegedly 'intervening act,' even an illegal act, does not sever causation if it is foreseeable.").

77.     These rulings also are consistent with the Supreme Court of Appeals' recognition that "not every intervening event wipes out another's preceding negligence.  In fact, 'a tortfeasor whose negligence is a substantial factor in bringing about injuries is not relieved from liability by the intervening acts of third persons if those acts were reasonably foreseeable by the original tortfeasor at the time of his negligent conduct.'"  *Wal-Mart Stores East, L.P. v. Ankrom*, 244 W. Va. 437, 450, 854 S.E.2d 257, 270 (2020) (quoting Syl. Pt. 13, *Anderson v. Moulder, supra*).

78.     The State's pleading of proximate causation satisfies the West Virginia standard. *See, e.g.,* CVS FAC, ¶ 74 ("CVS's failure to exercise appropriate controls foreseeably harms the public health and welfare."); ¶ 196 ("[A] reasonable person in CVS's position would foresee the widespread problems of opioid addiction and abuse that resulted from the drastic oversupply of opioids in this state.").  The Panel finds persuasive in this setting the court's recognition in *City and County of San Francisco*, *supra*, that the "very existence of the duties to maintain effective

32

controls supports the notion that opioid misuse is foreseeable.  'A lack of reasonable care in the handling, distribution, and administration of controlled substances can foreseeably harm the individuals who take them.  That's why they're 'controlled' in the first place—overuse or misuse can lead to addictions and long-term health problems.'"  491 F. Supp. 3d at 680 (quoting *Dent v. NFL*, 902 F.3d 1109, 1119 (9th Cir. 2018)).  Against this backdrop, the State sufficiently pleads public nuisance proximate causation.

79.     The Pharmacy Defendants nonetheless challenge the State's pleading of proximate causation, arguing that the State fails to allege how their "purportedly insufficient suspicious order monitoring system and anti-diversion efforts caused the nuisance when the Board of Pharmacy independently receives extensive information about controlled-substance prescriptions and thereby knows about each opioid prescription."  CVS Dispensing MOL at 31. This fact-based argument is not grounds for Rule 12(b)(6) dismissal.  Moreover, any act or omission of the Board of Pharmacy does not relieve Defendants of their own duties to maintain effective controls against diversion, including by operating systems to identify and report suspicious orders and block their shipment pending investigation, and to identify and block medically illegitimate prescriptions.  *See* 21 C.F.R. §§ 1301.71(a), 1301.74(b), 1306.04(a); W. Va. C.S.R. §§ 15-2-5.1.1, 15-2-5.3, 15-2-8.4.1; Order Granting City/County Plaintiffs' Motion for Partial Summary Judgment Regarding Duties Arising Out of the Controlled Substances Act (Transaction ID 67706109) at 7-8 (duty to maintain effective controls against diversion includes requirement to "stop shipment of suspicious orders, and hold orders of a similar drug class, pending investigation and due diligence").

80.     The decision in *City of Huntington, supra*, does not warrant reconsideration of the Panel's rulings that the Plaintiffs in this litigation have sufficiently pleaded public nuisance

proximate causation.  The *Huntington* decision was based on a voluminous factual record from an eight-week bench trial.  *See* 2022 WL 2399876, at *1-8 (describing proceedings and listing 70 fact and expert witnesses).  Moreover, the court's statement that "oversupply and diversion were made possible, beyond the supply of opioids by [distributor] defendants, by overprescribing by doctors, *dispensing by pharmacists of the excessive prescriptions*, and diversion of the drugs to illegal usage—all effective intervening causes beyond the control of defendants[,]" *id.* at *67 (emphasis added), was made after the court had ruled that the plaintiffs "fail[ed] to prove unreasonable conduct by the defendants.  *Id.* at *35.

81.    Those statements addressing the role of wholesale distributors in the opioid supply chain also are inapposite to the role of Pharmacy Defendants here.  The *City of Huntington* court expressly distinguished and singled out pharmacies as having additional duties:

> Distributors also are not pharmacists with expertise in assessing red flags that may be present in a prescription.

> Indeed, the CSA 'imposes duties on [pharmacies] to maintain systems, policies, or procedures to identify prescriptions that bear indicia ("red flags") that the prescription is invalid, or that the prescribed drugs may be diverted for illegitimate use.  There is no question that dispensers of controlled substances are obligated to check for and conclusively resolve red flags of possible diversion prior to dispensing those substances.'

> Pharmacies are obviously best equipped to decide whether to fill prescriptions.

*Id.* at *65 (quoting *In re Nat'l Prescription Opiate Litig.*, 477 F. Supp. 3d 613, 629 (N.D. Ohio 2020)).  Because of the explicit differentiation between the roles of wholesale distributors and pharmacies, the *City of Huntington* court's discussion of proximate causation does not bear on the State's claims against Pharmacy Defendants here even putting aside the different procedural postures of these cases.  The State sufficiently pleads public nuisance proximate causation.

82.     In sum, based on the foregoing authority and analysis, the Panel holds that the State pleads viable public nuisance claims against the Pharmacy Defendants.

**E.      Pleading of Right to Equitable Relief**

83.     The State pleads that it has a right to "[e]quitable relief, including, but not limited to, restitution and disgorgement[.]" CVS FAC, Prayer for Relief ¶ c.  The WVCCPA provides the State with the right to this relief in a public enforcement action.

84.     The WVCCPA provides that "[t]he attorney general may bring a civil action to restrain a person from violating this chapter and for other appropriate relief."  W. Va. Code § 46A-7-108.  The Supreme Court of Appeals has held that the Act's "use of the phrase 'other appropriate relief' indicates that the legislature meant the full array of equitable relief to be available in suits brought by the Attorney General."  *Imperial Mktg. II*, 203 W. Va. At 215-16, 506 S.E.2d at 811-12.  This includes disgorgement of ill-gotten gains.  *See State v. Imperial Mktg.*, 196 W. Va. 346, 352 n.7, 472 S.E.2d 792, 798 n.7 (1996) ("*Imperial Mktg. I*") ("The Attorney General is seeking additional relief beyond preliminarily enjoining SCI from engaging in violations of the Consumer Credit and Protection Act . . . , including . . . a disgorgement of funds illegally obtained . . . .").

85.     Defendants seek to dismiss the State's WVCCPA claims for disgorgement and other equitable relief, arguing that this is barred by laches.  *See* CVS Dispensing MOL at 34; Walgreens Dispensing MOL at 24-25 (applying argument to claim for disgorgement and attorneys' fees and costs); Walmart MOL at 36-37.  This argument does not have merit for at least three independent reasons.

86.     First, laches does not apply where the State is acting within its police powers, as it is here in bringing this WVCCPA enforcement action.  *See* Syl. P.t 7, *State v. Sponaugle*, 45 W.

Va. 415, 32 S.E. 283 (1898) ("Laches is not imputable to the state."). Even in cases where laches has been invoked against state-*sponsored* entities (as opposed to the State itself), it is applied narrowly and conservatively so that the interests of the State and the public may be given substantial consideration. *State ex rel Webb v. W. Va. Bd. Of Medicine*, 203 W. Va. 234, 237-38, 506 S.E.2d 830, 833-34 (1998). These principles are consistent with the Supreme Court of Appeals' holding that actions seeking equitable relief are not subject to statutes of limitation. *See* Syl. P.t 2, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009).

87. Second, Defendants do not demonstrate prejudice, as required for laches to apply, Syl. Pt. 3, *Kinsinger v. Pethel*, 234 W. Va. 463, 766 S.E.2d 410 (2014), given the recent nature of their conduct, their denial of liability, and the fact that their conduct is alleged to have created harms that are as-of-yet unabated. *See* Syl. Pt. 2, *Mundy v. Arcuri*, 165 W. Va. 128, 267 S.E.2d 454 (1980) ("Where a party knows his rights or is cognizant of his interest in a particular subject-matter, but takes no steps to enforce the same until the condition of the other party has, in good faith, become so changed, that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right.").

88. Third, Defendants' arguments also fail because their own actions helped shield their misconduct. By continuing to distribute and dispense opioids in West Virginia while operating systematically deficient suspicious order monitoring systems and having duties to stop unresolved suspicious orders and flagged prescriptions, Defendants created an inaccurate appearance that they were filling legitimate orders and prescriptions. *See, e.g.*, CVS FAC, ¶ 139 ("Before 2009, CVS lacked any meaningful suspicious order monitoring ('SOM'). Instead, CVS relied on gut instincts of 'Pickers and Packers' of the drugs in the distribution center to identify

'really big' orders that they believed were simply too large.  This was not an effective or legally compliant SOM system – or a system at all.") (citing deposition testimony); ¶ 141 ("CVS did not even begin to design a rudimentary SOM program until 2007."); *see generally W. Va. Bd. of Med.*, 203 W. Va. at 240 n.2506 S.E.2d at 836 n.2 (Workman, J. concurring in part and dissenting in part) ("An element of the equitable defense of laches dictates that the defendant may not obtain the benefit of the defense where his own actions have created the inequity.  Thus, where an individual asserting the doctrine of laches has caused or contributed to the delay, laches is inapplicable.").

89.    For each of these reasons, the Panel holds that the doctrine of laches does not apply to support dismissal on the pleadings of the State's WVCCPA claims for equitable relief.

90.    Defendants also seek dismissal of the State's request for equitable relief on the ground that the State does not allege that it paid money to Defendants.  *See, e.g.*, CVS Dispensing MOL at 34 n.16.  This argument also does not have merit.  The WVCCPA does not require the State to prove its own payment of money in a public enforcement action seeking equitable relief.  *See State v. CVS*, 646 F.3d at 173 ("As authorized by these Acts, the West Virginia Attorney General is, in this action, seeking . . . equitable relief, including but not limited to restitution and disgorgement of moneys obtained as a result of the overcharges . . . .").  To the extent Defendants obtained monies as a result of their wrongful distribution and dispensing practices, *see, e.g.*, CVS FAC, ¶¶ 160-72 (from 2006 to 2014, CVS dispensed over 2.4 billion morphine milligram equivalents of opioids in West Virginia), they may be ordered to disgorge these monies.

91.    The Panel holds that the State pleads viable claims for equitable disgorgement and other appropriate equitable relief under the WVCCPA.

37

### F.      Timely Service of Complaints

92.     Rite Aid and CVS also sought dismissal without prejudice of the State's Complaints on the grounds of allegedly untimely service pursuant to W. Va. R. Civ. P. 12(b)(4). *See* Rite Aid of Maryland Distribution MOL at 29-30; Rite Aid of West Virginia Distribution MOL at 29-30; CVS Distribution MOL at 29 n.9.  These arguments, too, do not have merit.

93.     The State provided service on Rite Aid to the Secretary of State's Office on September 30, 2020, which is within 120 days of the Rite Aid Complaint's filing on June 3, 2020.  The State thus has complied with W. Va. R. Civ. P. 4(k).  Under West Virginia's "long arm" statute, the State completed service by "leaving the original and two copies of both the summons and the Complaint, and the fee required by § 59-1-2 of this code with the Secretary of State, or in his or her office . . . ."  W. Va. Code § 56-3-33(c).  The State provided the required copies of the Complaint and summons in person to the Secretary of State's Office on September 30, 2020, which was within 120 days of the Complaint's June 3, 2020 filing date, thus satisfying the State's obligation under Rule 4(k) and under the "long arm" statute.  The State's service of the Complaint and summons on Rite Aid was timely.

94.     The State provided service on CVS to the Secretary of State's Office on December 15, 2020, which is within 120 days of the CVS Complaint's filing on August 18, 2020.  The State thus has complied with W. Va. R. Civ. P. 4(k).  Under West Virginia's "long arm" statute, the State completed service by "leaving the original and two copies of both the summons and the Complaint, and the fee required by § 59-1-2 of this code with the Secretary of State, or in his or her office . . . ."  W. Va. Code § 56-3-33(c).  The State provided the required copies of the Complaint and summons in person to the Secretary of State's Office on December 15, 2020, which was within 120 days of the Complaint's August 18, 2020, filing date, thus

satisfying the State's obligation under Rule 4(k) and under the "long arm" statute.  The State's service of the Complaint and summons on CVS was timely.

## ORDER

Based on the foregoing Findings of Fact and Conclusions of Law, the Motions to Dismiss Complaints and Amended Complaints filed by Pharmacy Defendants CVS, Walgreens, and Walmart (Transaction IDs 66812516, 67074618, 66816944, 67074136, and 66979844) are **DENIED.**  These proceedings are stayed as to Pharmacy Defendant Rite Aid to permit the parties to finalize settlement.  *See* Footnote 4 *Supra*.

The Pharmacy Defendants' objections are noted for the record.

A copy of this Order has this day been electronically served on al counsel of record via File & Serve*Xpress*.

It is so **ORDERED.**

**ENTERED:**   August 3, 2022.                          /s/ Alan D. Moats
                                                        Lead Presiding Judge
                                                        Opioid Litigation


                                                        /s/ Derek C. Swope
                                                        Presiding Judge
                                                        Opioid Litigation